

**U.S. Department of Justice**
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530

November 9, 2018

**<u>VIA ECF</u>**

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>*Make the Road New York,* et al. *v. U.S. Dep't of Homeland Security,* et al., No. 1:18-cv-2445-NGG-JO (EDNY)</u>

Dear Judge Garaufis:

      Defendants write in response to the Court's Orders of November 2 and 6, 2018, as well as Plaintiffs' filing made November 5, 2018, ECF No. 33. Though Defendants maintain that a global scheduling order is unnecessary, *see* ECF No. 31, if the Court is so inclined, Defendants ask that the Court order: 1) DHS to process a minimum of 300 pages per month, with production completed no later than May 31, 2021; 2) USCIS to continue processing a minimum of 700 pages per month, with production completed no later than February 28, 2019; 3) OIP to update the Court with a proposed processing schedule by December 21, 2018; and 4) Defendants to meet and confer with Plaintiffs and submit to the Court their positions on timing for dispositive motions no later than 30 days after the last defendant completes processing of Plaintiffs' FOIA request. DHS further asks the Court not to require expedited processing of the Alsup documents and not to require the Defendants to provide Plaintiffs with rolling Vaughn indices.

**Background**

      On September 22, 2017, Plaintiffs submitted a FOIA Request ("First Request") to multiple agencies and components, including all Defendants in this matter, seeking records related to the operation of the Deferred Action for Childhood Arrivals ("DACA") policy and the decision to rescind DACA. *See* ECF No. 1-9. Seven months later, on April 25, 2018, Plaintiffs filed the instant action, challenging all Defendants except for the Department of Justice Civil Division's ("DOJ-CIV") response to the First Request. *See* ECF No. 1, ¶¶ 113-118.

      Six weeks after this case was filed, Plaintiffs submitted a second FOIA Request ("Second Request") to the Department of Justice seeking records of communications between certain DOJ officials and individuals in the Texas Attorney General's Office. *See* ECF No. 21-15. Less than three weeks later, Plaintiffs amended their complaint to include specific challenges related to the

Second Request.  *See* ECF No. 21.

As of the date of this filing, the Department of Justice's Office of Legal Counsel and Office of the Solicitor General have completed processing Plaintiffs' First Request, the only request directed to them.  The Civil Division has completed processing of both of Plaintiffs' FOIA requests.  The Department of Homeland Security (DHS) and United States Citizenship and Immigration Services (USCIS) are still working to process Plaintiffs' First Request, the only request directed to them, and the Office of the Attorney General (OAG) is still working to process both of Plaintiffs' FOIA request.

**Time Necessary to Complete Processing of Plaintiffs' FOIA Request**

1. **Department of Homeland Security (DHS)**: In light of DHS's resource constraints, explained further below, the processing of nearly 9,000 pages of records in just over three months would not only be overly burdensome, but would be impossible.

   DHS's Privacy FOIA staff includes only the Deputy Chief FOIA officer, a Senior Director of FOIA operations, 4 director level positions, 4.5 litigation analyst positions, 5 FOIA specialist positions, and 8 contractors.  *See* Decl. of James V.M.L. Holzer ("Holzer Decl.") ¶ 8, attached hereto as Ex. 1.  Six of these individuals are new to the office, and have little to no experience processing records for complex FOIA requests such the requests that are the subject of this litigation.  *Id.*  In addition, the Senior Director position, which supervises the directors and litigation team is currently vacant.  *Id.*  Together, these individuals are responsible for receiving all new FOIA requests, along with referrals and consultations requests from other agencies or DHS components, logging these requests into the case tracking system, sending out search taskers to various offices, reviewing responsive records for withholding determinations, making redactions for exempt information, sending out FOIA responses, and working on other miscellaneous projects.  *Id.* at ¶ 9.

   The FOIA office's current workload is immense.  In FY 2018 alone, DHS received 1,455 FOIA requests, two-thirds of which were categorized as "complex," meaning they involve a wide-ranging search and large number of records.  *Id.* at ¶ 10.  DHS Privacy is currently involved in 59 active FOIA-related lawsuits and is also responsible for coordinating efforts on an additional 13 cases related to Executive Order No. 13, 769, which requires extensive coordination among DHS components.  *Id.* at ¶ 12.  Combined, pre-existing court orders alone require DHS Privacy to process at least 4,850 pages per month, in addition to the 1,600 pages per month that DHS Privacy is processing for other cases in litigation that do not have court-ordered production schedules.  *Id.*  In addition to processing records, the DHS Privacy FOIA litigation team members are frequently called upon to assist agency counsel in preparing filings, drafting declarations, and drafting *Vaughn* indices, as well as administrative duties related to administrative appeals of FOIA responses.  *Id.* at ¶ 13.

   Based on these competing priorities and personnel limitations described above, DHS Privacy has determined that it can process no more than 300 pages per month for this case, especially

Case 1:18-cv-02445-NGG-TAM   Document 34   Filed 11/09/18   Page 3 of 7 PageID #: 360

given the current resources that DHS Privacy must dedicate to FOIA requests in active litigation that are subject to a court order for production.  *See id.* at ¶¶ 16, 18.  At a minimum, in order to process Plaintiffs' request on an accelerated timeline, DHS would have to shift FOIA specialists away from processing non-litigation-related requests, further increasing DHS's FOIA backlog to the disadvantage of other members of the public seeking information through the FOIA process.  *Id.* at ¶¶ 18, 19.  Moreover, an order requiring DHS to process more than 300 pages per month would also risk straining DHS resources to a degree that DHS would be in jeopardy of being in contempt of orders from other courts.  *Id.* at ¶ 19.

Because FOIA processing requires extensive knowledge of both relevant law and of DHS's organization and activities, detailing non-FOIA-expert staff from other DHS positions would not substantially increase DHS's processing capacity immediately.  *Id.* at ¶ 18.  Even if DHS were able to obtain additional funding to hire more staff for the FOIA office, the recruitment, hiring, onboarding, and security clearance processes necessary to place even one person on the FOIA team could take several months.  *Id.* at ¶ 18.  Indeed courts have acknowledged the unique requirements of processing FOIA documents.  *See Stonehill v. IRS*, 558 F.3d 534, 539 (D.C. Cir. 2009) ("[U]nlike in civil discovery, there is no opportunity to obtain a protective order [on documents disclosed under FOIA].  In that respect, the stakes of disclosure are greater in the FOIA context.").

For all of these reasons, DHS requests that the Court order it to review a minimum of 300 pages per month and to complete production no later than May 31, 2021.

2. **United States Citizenship and Immigration Services (USCIS)**: USCIS intends to continue processing a minimum of 700 pages per month, as previously agreed upon with Plaintiffs, and to complete production no later than February 28, 2019.

3. **Department of Justice Office of the Attorney General (OAG)**: The Office of Information Policy (OIP), which processes FOIA requests on behalf of OAG, has not yet completed its searches related to Plaintiffs' FOIA request, in part, because of a technical issue that is requiring OIP to conduct remediation searches for previously conducted searches affected by the technical issue.[1]  But in light of the circumstances surrounding this request, and the completion of many remediation searches for other matters in litigation subject to processing deadlines, OIP will prioritize the completion of its search for records potentially responsive to Plaintiffs' FOIA request by early December.  Until the search is complete and OIP has an opportunity to analyze the volume and complexity of the preliminary results, OIP cannot agree to complete processing by a date certain.  OIP asks the Court to allow it to complete the search for records potentially responsive to Plaintiffs' FOIA request and to propose a processing schedule to the Court on December 21, 2018.

---

[1] Plaintiffs' claims of improperly withheld documents are limited to their First FOIA Request to OIP, *see* ECF No. 21, ¶¶ 114-24, so OIP's proposed schedule is similarly limited to the processing of Plaintiffs' First FOIA Request.

3

**Prioritization of the Alsup Documents**

Plaintiffs' request that DHS process documents produced *in camera* to Judge Alsup[2] places additional burden on the agency and misunderstands the agency's obligations under the FOIA. An agency's response to a FOIA request is "not measured by its results, but rather by its method." *New York Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 124 (2d Cir. 2014). Federal agencies are not required to conduct a search for responsive records, or process responsive records, in the manner dictated by Plaintiffs. *See Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015) (citing *Physicians for Human Rights v. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) ("[A] FOIA petitioner cannot dictate the search terms for his or her FOIA request.")). Instead, federal agencies are afforded the discretion in conducting a search in the manner "they believe to be reasonably tailored to uncover documents responsive to the FOIA request." *Id.* (internal quotations omitted).

Defendants here are conducting searches and processing documents in the manner that they believe will most efficiently produce a comprehensive response to Plaintiffs' request. While the Alsup documents may be responsive to Plaintiffs' FOIA request, Plaintiffs should not be encouraged to use FOIA as a means to supplement the administrative record in other litigation. *See Baldridge v. Shapiro*, 455 U.S. 345, 360 n. 14 (1982) ("The primary purpose of the FOIA was not to benefit private litigants or to serve as a substitute for civil discovery."); *Clay v. U.S. Dep't of Justice*, 680 F. Supp. 2d 239, 248 (D.D.C. 2010) (citing *North v. Walsh*, 881 F.2d 1088, 1096 (D.C. Cir. 1989)) ("Because the FOIA is concerned only with the disclosure of agency records, the requester's identity and purpose for the disclosure are generally immaterial.").

In addition to going beyond the agency's obligations under the FOIA, requiring the agency to separately search for and process these documents would create an undue burden for the agency. DHS has already conducted the search for documents responsive to Plaintiffs' request and loaded the documents into its FOIA processing software, FOIAXpress. Though FOIAXpress has an Advanced Document Review (ADR) function that allows for keyword searches to filter out non-responsive documents, the documents have already been transferred to the Document Management (DM) function. Holzer Decl. ¶¶ 22, 26. It is not possible to sort or otherwise group documents within the DM. *Id.* at ¶ 24. To sort or group records already in DM, the analyst would need to delete the record set within DM, sort the records in ADR, and then re-upload the documents to DM for processing. *Id.* If DHS were to delete the record set in DM in order to identify the Alsup documents in ADR, and then transfer two sets of records back into DM, DHS would not be able to identify the records that have already been processed. *Id.* at ¶ 26. Conversely, if DHS were to manually search through all of the remaining records in DM in an attempt to identify and process the Alsup documents, DHS would not be able to mark those documents as having been previously processed when working on subsequent productions. *Id.* at ¶ 26. That type of manual search would be incredibly time-consuming, and the inevitable duplicate processing of those previously released documents would pose a significant strain on

---

[2] Although it is not clear which 35 of these documents Plaintiffs refer to, the privilege log identifying the 84 documents produced *in camera* to Judge Alsup in the Northern District can be found on the docket for that case. *Regents of Univ. of Cal., et al. v. DHS, et al.*, 3:17-cv-05211-WHA, ECF No. 71-2 (N.D. Cal.).

DHS' already limited resources, and further delay production for this and other FOIA requests. *Id.* Moreover, this additional burden is of Plaintiffs' own making, as Plaintiffs chose to submit a broad FOIA request rather than a narrower request for these particular records.

Should the Court nonetheless order expedited processing of the Alsup documents, DHS would be unable to process the documents by November 30, 2018, the date requested by Plaintiffs. DHS estimates that it would need at least 90 days from this Court's order to process the Alsup documents.

**Production of Rolling *Vaughn* Indices**

Plaintiffs' demand for rolling *Vaughn* indices is unwarranted, premature, and would undermine Defendants ability to process Plaintiffs' FOIA request. A *Vaughn* index, *see Vaughn v. Rosen,* 484 F.2d 820, 825 (D.C.Cir.1973), "typically lists the titles and descriptions of the responsive documents that the Government contends are exempt from disclosure." *New York Times Co. v. U.S. Dep't of Justice*, 758 F.3d 436, 438-39 (2d Cir. 2014). However, there is no statutory requirement to produce a *Vaughn* index. Rather, it was developed as one possible tool for courts to evaluate defendants' claims of statutory exemptions on dispositive motions without having to engage in the "cumbersome alternative" of examining large quantities of documents *in camera* to make exemption rulings. *Id.* at 438. Indeed the Second Circuit, among others, recognizes that a *Vaughn* index can be unnecessary when "detailed affidavits from agency officials may suffice to indicate that requested documents are exempt from disclosure." *Id.* at 439; *see also Minier v. CIA*, 88 F.3d 796, 804 (9th Cir. 1996) ("[W]hen the affidavit submitted by an agency is sufficient to establish that the requested documents should not be disclosed," or when a FOIA requester otherwise "has sufficient information to present a full legal argument," a *Vaughn* index is not necessary.).

But even if the court determines that a *Vaughn* index is eventually warranted for each defendant in this case, the court should not order Defendants to submit rolling *Vaughn* indices prior to the filing of dispositive motions. Given that *Vaughn* indices are intended to be tools for the court to evaluate Defendants claimed exemptions on dispositive motion briefing, there is no benefit to receiving this information in a piecemeal fashion. Moreover, courts routinely hold that production of a *Vaughn* index before the agency's filing of a dispositive motion is inappropriate. *See, e.g., Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified. The plaintiff's early attempt in litigation of this kind to obtain a *Vaughn* Index . . . is inappropriate until the government has first had a chance to provide the court with the information necessary to make a decision on the applicable exemptions."); *City & Cnty. of Honolulu v. EPA*, No. 08-00404 SOM-LEK, 2009 WL 973154, at *1–2 (D. Haw. Apr. 9, 2009) (declining to order agency to produce *Vaughn* index prior to filing summary judgment motion); *Long v. Dep't of Homeland Security*, 436 F. Supp. 2d 38, 44 (D.D.C. 2006) (finding plaintiff's request for *Vaughn* index premature where the government had not yet had a chance to file a dispositive motion); *United States Committee on Refugees v. Dep't of State*, No. 91- 3303, 1992 WL 35089, *1 (D.D.C. Feb. 7, 1992) ("[T]he preparation of a *Vaughn* index is unwarranted

before the filing of dispositive motions in FOIA actions because the filing of a dispositive motion, along with detailed affidavits, may obviate the need for indexing the withheld documents.") (internal citation omitted); *Stimac*, 620 F. Supp. at 213 ("[T]he preparation of a *Vaughn* Index would be premature before the filing of dispositive motions.").

In addition to being unwarranted and premature, Plaintiffs' request for rolling *Vaughn* indices would wreak havoc with Defendants' ability to devote resources to processing Plaintiffs' FOIA request. Plaintiffs have represented to this Court that they have an immediate need for records responsive to their FOIA request, but they now ask the Court to order Defendants to shift resources from processing potentially responsive records to preparing *Vaughn* indices that will not be useful until processing is complete. For example, USCIS, who has already processed over 2,000 pages of documents and has agreed to a resource-intensive processing schedule, simply does not have the resources to continue processing 700 pages per month in addition to preparing a *Vaughn* index for future and prior releases. The other Defendants likewise would have to use the very resources committed to processing this request to prepare the *Vaughn* indices that Plaintiff seeks, which would necessarily slow down the processing of the records.

For these reasons, Defendants ask the Court to deny Plaintiffs' request for the production of rolling *Vaughn* indices. Defendants will file *Vaughn* indices, if necessary, with any summary judgment motions they file.

**Dispositive Motion Briefing**

Defendants believe it is premature to set a dispositive briefing schedule at present before production is complete. Until Plaintiffs have had a chance to review Defendants' completed production, it is impossible to assess the nature and scope of briefing that will be required, or even whether any issues will be in dispute. Defendants therefore propose that once production is completed, the parties will confer and determine whether there are outstanding issues that need to be resolved by the Court and, if so, they will then discuss a proposed schedule for briefing.

**Conclusion**

Should the Court determine that a global scheduling order is necessary, Defendants ask that the Court order: 1) DHS to process a minimum of 300 pages per month, with production completed no later than May 31, 2021; 2) USCIS to continue processing a minimum of 700 pages per month, with production completed no later than February 28, 2019; 3) OIP to update the Court with a proposed processing schedule by December 21, 2018; and 4) Defendants to meet and confer with Plaintiffs and submit to the Court their positions on timing for dispositive motions no later than 30 days after the last defendant completes processing of Plaintiffs' FOIA request. DHS further asks the Court not to require expedited processing of the Alsup documents and not to require the Defendants to provide Plaintiffs with rolling Vaughn indices.

Sincerely,

JOSEPH H. HUNT
Assistant Attorney General

RICHARD P. DONOGHUE
United States Attorney

MARCIA BERMAN
Assistant Branch Director

 */s/  Rachael L. Westmoreland*
RACHAEL L. WESTMORELAND
Trial Attorney (GA Bar No. 539498)
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 514-1280
E-mail: rachael.westmoreland@usdoj.gov