# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAKE THE ROAD NEW YORK and MAKE THE ROAD CONNECTICUT, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY, OFFICE OF THE SECRETARY OF HOMELAND SECURITY, U.S. CITIZENSHIP AND IMMIGRATION SERVICES, U.S. DEPARTMENT OF JUSTICE, OFFICE OF THE ATTORNEY GENERAL, OFFICE OF THE SOLICITOR GENERAL, and OFFICE OF LEGAL COUNSEL, <br><br> Defendants. | Case No.: 1:18-cv-02445-NGG-JO |

1.      I, James V.M.L. Holzer, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

2.      I am the Deputy Chief Freedom of Information Act ("FOIA") Officer for the Department of Homeland Security ("DHS") Privacy Office ("DHS Privacy").

3.      In this capacity, I am the DHS official responsible for implementing FOIA policy across DHS and responding to requests for records under the FOIA, 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other applicable records access provisions.  I have been employed by DHS Privacy in this capacity since May 2016.  I previously served as the Director of the Office of Government Information Services within the National Archives and Records Administration, and prior to that, I served as the Senior Director of FOIA Operations for DHS.

Holzer Declaration, Case No. 18-cv-02445

4.      Through the exercise of my official duties, I have become familiar with the background of Plaintiff's FOIA request, dated September 22, 2017.

5.      This declaration will provide a description of the DHS Privacy FOIA process, how the office is organized, our resource constraints, and technical limitations.

## **DHS Privacy's Current Resources and Workload**

6.      The Secretary of Homeland Security designated the DHS Chief Privacy Officer to serve concurrently as the Chief FOIA.  The Chief Privacy Officer leads the DHS Privacy Office and reports directly to the Secretary on FOIA matters.  On August 29, 2011, the Secretary delegated to the Chief Privacy Officer the authority to develop and oversee the implementation of policies within the Department and, except as otherwise provided by law, carry out the functions of the agency regarding compliance with the FOIA.

7.      The DHS Privacy FOIA staff processes initial FOIA and Privacy Act requests to the Office of the Secretary (including the Military Advisor's Office), Office of the Citizenship and Immigration Services Ombudsman, Countering Weapons of Mass Destruction Office, Office of the Executive Secretary, Office of Partnership and Engagement, Management Directorate, Office for Civil Rights and Civil Liberties, Office of Operations Coordination, Office of Strategy, Policy, and Plans, Office of the General Counsel, Office of Legislative Affairs, and Office of Public Affairs.

8.      DHS Privacy's FOIA staff consists of a Deputy Chief FOIA officer, a Senior Director of FOIA operations, 4 director level positions, 4.5 litigation analyst positions (to include 1 contractor and 1 part-time employee), 5 FOIA specialist positions, and 8 contractors.  At this time, 6 of the DHS Privacy FOIA employees are new, with little to no experience processing

Holzer Declaration, Case No. 18-cv-02445

records for complex FOIA requests and 1 of the FOIA specialist positions is vacant.  The Senior

Director position, which supervises the directors and the litigation team, is also currently vacant.

9.      FOIA specialists handle all aspects of the FOIA request process.  They receive

new FOIA requests, along with referrals and consultation requests from other agencies or DHS

components, log those new FOIA requests into the FOIA case tracking system, and send out

search taskers to various offices compelling them to search for records.  Once those searches are

complete, FOIA specialists review any records located and make withholding determinations,

redacting any exempt information pursuant to the FOIA exemptions.  FOIA specialists also send

out FOIA responses and work on other FOIA projects for DHS Privacy, as needed.

10.      In FY 2017, DHS Privacy received 1,348 FOIA requests and in FY 2018 this

number increased to 1,455 FOIA requests.  About two-thirds of the requests received by DHS

Privacy are categorized as complex requests, meaning that they require a wide-ranging search,

frequently across multiple offices, and involve a large number of records.

11.      In FY 2018, FOIA specialists in DHS Privacy worked on significant backlog

reduction projects for the Office of Biometric Identity Management (OBIM), U.S. Immigration

and Customs Enforcement (ICE), and U.S. Customs and Border Protection (CBP).  Throughout

FY 2018, DHS Privacy FOIA specialists processed 13,802 FOIA requests (totaling over 22,000

pages) for OBIM, 2,295 FOIA requests for ICE (totaling over 73,000 pages), and 3,648 FOIA

requests for CBP (totaling over 25,000 pages).  It is highly likely that the FOIA specialists in

DHS Privacy will be required to assist in similar backlog reduction efforts during FY 2019, as

requests for immigration related records continue to increase throughout the Department.

12.      DHS Privacy has experienced an increase of 65% in FOIA-related litigation since

FY2016.  DHS Privacy is currently involved in 59 active lawsuits, and is responsible for

Holzer Declaration, Case No. 18-cv-02445

coordinating DHS-wide efforts on an additional 13 cases in which the FOIA requests at issue (seeking various categories of records related to Executive Order No. 13,769) were directed only to CBP but require extensive consultation among DHS components.  In FY2018, DHS Privacy reviewed over 100,000 pages of records from DHS components relating to this and other component FOIA litigations.  Of the cases in which DHS Privacy is directly involved, 16 cases, including the instant case, are at the point where DHS Privacy is actively facilitating the production of documents.  DHS Privacy is subject to court orders in 9 cases that collectively require DHS Privacy to process at least 4,850 pages per month, and it is anticipated that similar court orders may be issued in one or more other pending cases potentially making this total even higher in the near future.  In addition, DHS Privacy has been processing approximately 1,600 additional pages per month for other cases that are in litigation but for which the court has not ordered DHS Privacy to process a minimum number of pages per month.

13.    In addition to processing records for various litigation releases, members of the DHS FOIA litigation team also assist agency counsel in preparing Answers upon receipt of new Complaints, draft the majority of the Declarations that are filed in FOIA litigation, and draft *Vaughn* indices.  The team also has duties that do not relate directly to litigation, such as logging-in, acknowledging, and transferring all administrative appeals of FOIA responses to the U.S. Coast Guard administrative law judges who adjudicate DHS Headquarters FOIA appeals. Litigation team members also are frequently called upon to train new employees and assist with highly complex FOIA requests outside of litigation.

## DHS Privacy's Progress on Plaintiff's FOIA Request

14.    At this time, DHS has completed its search for records in response to Plaintiff's request.

Holzer Declaration, Case No. 18-cv-02445

15.     DHS located approximately 9,000 pages of potentially responsive records during its search.  To date, DHS has reviewed 259 of those pages and made one interim release.

16.     Going forward, DHS is committed to reviewing 300 pages of records each month for Plaintiff's request until the processing of all records is completed.

17.     Placing accelerated deadlines on DHS's processing of the remaining records to accommodate Plaintiff's timeline would further burden DHS's already strained resources and inevitably risk the inadvertent release of sensitive and FOIA-exempt information. In fact, the records DHS sent to the Plaintiff for the first interim release in the instant case, on October 31, 2018, contained translucent redactions.  DHS had to send out a corrected release, with properly redacted documents on November 1, 2018, and because the record set contained personally identifiable information of a DACA recipient, reported the incident to the DHS Privacy Incidents team.  This incident was the direct result of DHS Privacy having to use staff that is new to FOIA litigation to make the release, and any accelerated deadlines or increased page requirements will risk causing similar or worse incidents in the future.

18.     In order to attempt to process these documents at any rate higher than 300 pages per month, DHS Privacy would have to reallocate significant resources from other pending FOIA requests, many of which are also the subject of active litigation.  DHS Privacy could not feasibly process Plaintiff's requested records any faster simply by utilizing the personnel and resources specifically assigned to process FOIA requests in active litigation.  Further, because document processing under FOIA requires extensive knowledge both of the relevant law and of DHS's organization and activities, detailing non-FOIA-expert staff from other DHS work would be infeasible, and would not substantially increase DHS Privacy's processing capacity in the near term.  Additionally, were DHS able to obtain additional funding to hire more staff, the

Holzer Declaration, Case No. 18-cv-02445

recruitment, hiring, onboarding, and security clearance processes necessary to place even one

person on the FOIA team is time consuming, and could take months.

19.    At a minimum, in order to process any DHS records already located by DHS

Privacy on an accelerated timeline, DHS Privacy would have to shift several FOIA specialists

from processing non-litigation-related requests and dedicate them to addressing Plaintiff's

request.  This would inevitably increase DHS Privacy's FOIA backlog to the disadvantage of

other members of the public seeking information through the FOIA process, and may strain the

resources of DHS Privacy to a degree that DHS would be in jeopardy of being in contempt of

orders from several other courts.

## Technical Constraints of DHS' FOIA Processing Software

20.    DHS does not currently have the ability to identify specific documents within a

record set, once that record set has been uploaded into the document management (processing)

side of the FOIA processing software DHS Privacy currently uses.

21.    DHS uses a FOIA tracking and processing program called FOIAXpress to

manage and track FOIA requests, and to review or redact records located pursuant to any

searches conducted in response to those FOIA requests.

22.    FOIAXpress has an Advanced Document Review (ADR) function that, to a

limited extent, can de-duplicate documents, and can identify email messages that are contained

within other email messages.  ADR also allows for additional searches by keywords to filter out

non-responsive documents.  While the records are in ADR, the system can provide information

on the number of documents ingested, and the number of documents located pursuant to a

keyword search, and the number of documents that have been identified as potentially

Holzer Declaration, Case No. 18-cv-02445

responsive.  It is not possible to determine the number of potentially responsive pages while the documents are in ADR.

23.     Once potentially responsive documents are identified through ADR, those documents are transferred within FOIAXpress to the document management (DM) function. Once in DM, it is possible to determine the number of potentially responsive pages, and it is at that point in the process where DHS is able to determine how long it will take to process all of the potentially responsive records.

24.     It is not possible to sort or otherwise group documents within DM.  Any sorting or grouping that needs to be done must be completed before the records are transferred from ADR to DM.  Otherwise, the analyst processing the request would need to delete the record set within DM, sort the records in ADR, and then re-upload the documents to DM for processing.

25.     When an analyst begins processing records in DM, they create a review layer which saves any redactions, marks, notes or review flags they apply to that record.  DHS generally makes rolling releases of records when a record set is large.  In the instant case, as stated in paragraph 14 above, DHS is able to process 300 pages per month.  In practice, this means that each month's release is saved as a new review layer.

26.     In this case, DHS has already processed 259 pages of records and made one interim release.  If DHS were to delete the record set in DM in order to identify the documents that Plaintiff has claimed are a priority in ADR, and then transfer two sets of records back into DM, DHS would not be able to identify the records that have already been processed. Conversely, if DHS were to manually search through all of the remaining records in DM in an attempt to identify and process those documents, DHS would not be able to mark those documents as having been previously processed when working on subsequent productions.  That

Holzer Declaration, Case No. 18-cv-02445

type of manual search would be incredibly time-consuming, and the inevitable duplicate

processing of those previously released documents would pose a significant strain on DHS'

already limited resources, and further delay production for this and other FOIA requests.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated the 9th day of November, 2018

James V.M.L. Holzer
Deputy Chief FOIA Officer
DHS Privacy Office
U.S. Department of Homeland Security

Holzer Declaration, Case No. 18-cv-02445