

**U.S. Department of Justice**
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005

March 4, 2022

**VIA ECF**

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: <u>*Make the Road New York,* et al. *v. U.S. Dep't of Homeland Security,* et al.,</u>
    <u>No. 1:18-cv-2445-NGG-TAM (EDNY)</u>

Dear Judge Garaufis:

  Defendants write in response to the Court's Order of February 14, 2022, directing the
parties to submit letter briefs addressing (1) the impact of the Second Circuit's decision in *Nat.
Res. Def. Council v. United States Env't Prot. Agency*, 19 F.4th 177 (2d Cir. 2021) ("*NRDC*"), on
resolving this case; and (2) proposed next steps in this litigation in light of the Second Circuit's
decision and the previously filed motions for summary judgment that had been held in abeyance.

  Defendants respectfully submit that the court should apply the law of this circuit, as set
forth in *NRDC*, to its review of the sample of documents already submitted. In keeping with the
Second Circuit's directive, however, Defendants "should have the opportunity to explain [their]
withholding decisions in light of the clarified standard" announced in *NRDC*. *NRDC*, 19 F.4th at
191-92. Accordingly, Defendants respectfully propose that the Court allow Defendants to submit
updated declarations and Vaughn indices for the documents in the sample submitted for the
Court's *in camera* review containing withholdings on the basis of deliberative process privilege,
and that the Court then proceed to review that sample in the manner originally intended, as per
the Court's Order of June 16, 2021.

  Plaintiffs' contention that the Court should ignore governing precedent in its review of
the sample does not withstand scrutiny. The cases Plaintiffs rely on show only that in sampling
cases, courts must avoid treating agency withholding decisions as erroneous when those
decisions were correct at the time they were made. *See, e.g.*, *ACLU v. NSA*, 925 F.3d 576, 602
(2d Cir. 2019) ("Imposing a continuing duty on agencies to update their responses to FOIA
requests as 'potentially relevant' documents . . . are disclosed piecemeal renders agencies
vulnerable to repeated reprocessing requests mid-litigation."). Here, however, the Court of
Appeals' decision in *NRDC confirmed* that the Defendants correctly understood the deliberative
process privilege, and that Plaintiff's position that the privilege did not apply to documents

"reflecting deliberations about how to communicate the agency's policies to people outside the agency," and documents connected to "a specific decisionmaking process" rather than "a discrete decision," was incorrect. *NRDC*, 19 F.4th at 181. *NRDC* thus vindicates the Defendants' withholding decisions at the time they were made. Plaintiffs suggest that the Court should ignore that decision at the sample-review stage, and instead adopt the view of the deliberative process privilege set out in their summary judgment briefing. *See* Pls.' Letter Br., ECF 86 at 9. But *NRDC* is binding precedent for this Court, and will govern the Court's ultimate decision as to which documents, if any, it orders Defendants to release. To follow Plaintiffs' proposed approach would artificially inflate the error rate in the sample and could lead the Court to order full reprocessing of the entire set of documents. Ultimately, however, the Court will have to apply *NRDC*'s governing precedent to the challenged withholdings. Plaintiffs' proposed approach would thus waste the resources of the Court and the parties.

Plaintiffs' claim that applying governing law to the Court's review of the sample documents would somehow destroy the representativeness of the sample is likewise baseless. The sample remains as representative of Defendants' withholdings and Plaintiffs' challenges as it was before *NRDC*. The fact that Plaintiffs may not prevail on certain contested legal questions does not render the sample unrepresentative, when neither the sample nor the broader set of documents have changed in any way. Plaintiffs have conspicuously failed to withdraw any of their challenges in light of the Second Circuit's rejection of two of their primary arguments on the deliberative process privilege, and Defendants maintain that their withholding decisions were correct. Accordingly, this is unlike the situation where an agency chooses to release documents it previously withheld, which can impact the representativeness of the remaining sample. *Cf. Bonner v. U.S. Dep't of State*, 928 F.3d 1148, 1153 (D.C. Cir. 1991).

## I.   *NRDC* Applies To This Case

Plaintiffs in their Letter Brief make no argument that the Court should ultimately order the release of any document that was properly withheld under the standard articulated in *NRDC*. Nor could they: "When [a court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate the announcement of the rule." *Margo v. Weiss*, 213 F.3d 55, 60 (2d Cir. 2000) (quoting *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993)); *see also, e.g., Besson v. U.S. Dep't of Commerce*, 480 F. Supp. 3d 105, 110 (D.D.C. 2020) (applying Supreme Court decision issued after briefing closed "which clarified the standard for confidentiality under [FOIA] Exemption 4."). That bottom-line conclusion should guide this Court's analysis of *NRDC*'s application in the context of the sampling procedure it has adopted. Even if the Court were to accept Plaintiffs' (now-defunct) arguments on the deliberative process privilege, and thus find a sufficient error rate in the sample to order reprocessing of the total set of withholdings, "[t]he operative standards for disclosure, of course, will be those in effect when the files are reprocessed," namely the standard explained in *NRDC*. *Meeropol v. Meese*, 790 F.2d 942, 960 (D.C. Cir. 1986).

The purpose of a representative sampling approach is "to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually." *Bonner*, 928 F.3d at 1151. With an appropriate sample, a court can "extrapolate its conclusions for the representative sample to the larger group of withheld materials." *Id.* (internal quotation marks and citation omitted). In other words, a sample is only useful if the court can use the sample to inform its conclusions about the overall set of withheld documents. Since *NRDC* must ultimately apply to the complete set of challenged documents in this case, reviewing the sample without applying *NRDC*'s guidance would produce meaningless results.

The cases Plaintiffs cite are not to the contrary. Those cases concerned documents that were correctly withheld at the time the decision was made, but that may have "become releasable with the passage of time" due to "post-response occurrences." *Bonner*, 928 F.2d at 1153. To avoid "an endless cycle of judicially mandated reprocessing," *id.* at 1152, those cases demonstrate that "courts should be chary of requests to consider the effect of events that post-date the agency's response to the requests at issue," *Shapiro v. Dep't of Justice*, No. 12-cv-313 (BAH), 2020 WL 3615511, at *13 (D.D.C. July 2, 2020). In *Bonner*, for example, the D.C. Circuit held that a post-withholding determination that certain documents in a sample "no longer posed a threat to national security" did not merit "reprocessing the entire group." *Bonner*, 928 F.2d at 1153. "The fact that there are documents which while properly withheld at the time the decision to withhold was made were nevertheless not exempt under *new* standards does not indicate error. . . . The government cannot be expected to follow an endlessly moving target." *Id.* (quoting *Meeropol*, 790 F.2d at 959). Similarly, *Meeropol* involved a post-withholding change to the "standard for classifying matters related to national security" that resulted in "increased disclosure." *Meeropol*, 790 F.2d at 959. Likewise, the Second Circuit in *ACLU* declined to order reprocessing when "several government disclosures that post-date the agency's initial FOIA decision" may have made initially withheld documents releasable. *ACLU*, 925 F.3d at 601-02. And in *Clemente*, the D.C. District Court determined that challenged withholdings in a representative sample were "improper when made," and at the time it ordered documents released, rather than improper only in light of subsequent developments. *Clemente v. FBI*, 854 F. Supp. 2d 49, 59 (D.D.C. 2012).

This case is entirely different. Defendants' understanding of the deliberative process privilege was correct at the time the withholding decisions were made, and the subsequent decision in *NRDC* merely confirmed the correctness of Defendants' approach. Moreover, even if the Court were to view applying *NRDC* as a departure from the "general rule" that "an agency's FOIA decision is evaluated as of the time it was made," this case would merit such a departure because "doing so is in the clear interest of judicial economy and would not burden the agency with prudential reprocessing." *ACLU*, 925 F.3d at 603.

Plaintiffs point to no cases in which, after a court of appeals settled an open question of circuit law in favor of an agency's withholding decisions, a district court nevertheless went on to ignore that development and order reprocessing or release of documents contrary to circuit law. There is no basis for this Court to accept Plaintiffs' invitation to be the first to do so.

3

## II.     Next Steps In Light Of *NRDC*

The Second Circuit in *NRDC* provided "clarity" and "guidance" that had been missing from circuit law on the scope of the deliberative process privilege. *NRDC*, 19 F.4th at 191, 193. As with the Defendants in this case, the EPA's overall understanding of the privilege was correct in *NRDC*. Nevertheless, because the EPA "could not have known the details that we would require to uphold its reliance on the privilege," the Court of Appeals held that it "should have the opportunity to explain its withholding decisions in light of the clarified standard," and permitted the agency to revise its Vaughn Index entries. *Id.* at 191-92, 193.

The same approach is appropriate for the sample documents here. Defendants deserve the opportunity to update their Vaughn indices and declarations pertaining to the deliberative process privilege in light of the newly announced details set forth in *NRDC*.

Permitting Defendants that opportunity would have no effect on the representativeness of the sample. Despite their protests that applying the correct legal standards would "impact" large numbers of the sample documents, Plaintiffs never explain how doing so would "destroy the sample's representativeness for each Defendant agency." Pl.s' Letter Br., ECF 86, at 7. "A sample is drawn from a larger pool," and it becomes unrepresentative when "the larger pool"— or the sample itself—"[i]s changed after sampling." *Colgan v. Dep't of Justice*, No. 14-CV-740 (TSC), 2020 WL 2043828, at *12, (D.D.C. Apr. 28, 2020). Here, nothing about the larger pool has changed: Plaintiffs maintain all the same challenges, and Defendants all the same withholdings, as when the sample was first submitted. Likewise, nothing has changed in the composition of the sample itself.

The cases Plaintiffs cite confirm that representativeness is a matter of the relation of the sample to the larger set of documents, not of the legal test applied in reviewing the sample. In *Bonner*, for example, the parties submitted a sample of 63 documents, but the State Department subsequently released 19 of them in full and provided a Vaughn index only for the remaining 44. *Bonner*, 928 F.2d at 1149. Because the sample documents "count not simply for themselves, but for presumably similar non-sample documents still withheld," the D.C. Circuit concluded that the sample could "yield satisfactory results" only if the State Department provided a full Vaughn index explaining why portions of those 19 documents were initially withheld. *Id.* at 1153. Likewise, in *Colgan*, the FBI released almost two thirds of the sample documents in the course of creating the Vaughn index for the sample; although the FBI went on to re-process the non-sample pages under the same standard, "it rendered the sample unrepresentative by changing the treatment of the documents underlying the sample." *Colgan*, 2020 WL 2043828, at *12.

Applying governing precedent, as set forth in *NRDC*, to the sample documents here creates no risk of impairing the representativeness of the sample, because *NRDC* applies equally to the full set of documents. *NRDC* thus changes nothing about how the sample relates to the underlying documents.

Nor would complying with *NRDC*'s instruction to permit agencies to revise their Vaughn

4

indices and declarations in light of the Second Circuit's new guidance have any effect on the representativeness of the sample. It is common in sampling cases for an agency to prepare a Vaughn index only for the sample documents; indeed, the whole point of sampling is to "reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a *Vaughn* index or an *in camera* inspection." *Bonner*, 928 F.2d at 1151. Thus, in *Bonner*, to permit sampling review of a total of 1,776 disputed documents, the State Department prepared a Vaughn index for the sample of 63 of the 1,033 partially redacted documents, "a less detailed descriptive index of the 743 fully withheld documents," and nothing for the remaining documents. *Id.* at 1149. Here, Defendants submitted Vaughn indices and declarations covering the entire set of contested documents, *see generally* ECF 56; allowing Defendants to update those materials for the sample documents will thus still result in a much lesser disparity in the depth of explanation between sample and non-sample documents than is often the case. Permitting Defendants to submit updated materials in light of *NRDC* is thus fully consistent with accepted standards in sampling cases, and would have no impact on the sample's representativeness. In keeping with the process the parties followed when initially submitting the sample, Defendants would not object to allowing Plaintiffs to similarly update the "Plaintiffs' Objection" column in the joint filing accompanying the sample documents. *See* ECF 82-1. However, should the Plaintiffs withdraw their objections to any withholdings in the sample, the Court should nevertheless include that correct withholding in both the numerator and the denominator when calculating the error rate in the sample; to do otherwise would permit Plaintiffs to artificially inflate the error rate. *Cf. Bonner*, 946 F.2d at 1153.

There is also no basis for Plaintiffs' alternative request, that the Court order full reprocessing of all documents and renewed motions for summary judgment should it determine that *NRDC* applies to this case. Applying *NRDC* to the sample that has already been submitted is fully consistent with precedent and with the efficiency-enhancing logic of sampling, and would best facilitate the prompt resolution of this case. And there is no need for additional summary judgment briefing, because Defendants' position in their previously filed summary judgment briefs fully accords with *NRDC*'s reasoning, and Plaintiffs have given no indication that they intend to withdraw any of their challenges or modify their position from the previously filed briefs.

## Defendants' Requested Order

Defendants therefore respectfully request that the Court permit Defendants to submit updated Vaughn indices and declarations in light of *NRDC* as to the sample documents containing withholdings on the basis of deliberative process privilege. In light of the passage of time since the initial preparation and submission of Defendants' Vaughn indices in July, 2019, *see* ECF 56, Defendants respectfully propose that they be given until March 25, 2022, to submit their updated materials, and that Plaintiffs be given until April 8, 2022, to submit their revised objections.

Defendants respectfully submit that, after the parties provide their updated materials, the Court should proceed to review the sample under governing law in this circuit, including as set

forth in *NRDC*.

Dated: March 4, 2022

Sincerely,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

MARCIA BERMAN
Assistant Branch Director

 */s/ Cormac Early*
GALEN N. THORP
Senior Trial Counsel (VA Bar No.
75517)
CORMAC EARLY
Trial Attorney (DC Bar No.
1033835)
U.S. Department of Justice
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-4781
E-mail: galen.thorp@usdoj.gov

*Counsel for Defendants*